UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERRY L.H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-1119-JES-JEH |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

# **ORDER**

This matter is now before the Court on a Report and Recommendation (Doc. 20) from Magistrate Judge Hawley recommending Plaintiff's Motion (Doc. 15) for Summary Judgment be denied and Defendant's Motion (Doc. 19) for Summary Judgment be granted. Plaintiff has filed an Objection (Doc. 21). For the reasons set forth below, the Court adopts the Report and Recommendation (Doc. 20), denies Plaintiff's Motion (Doc. 15), and grants Defendant's Motion (Doc. 19).

## BACKGROUND

The facts of this case have been sufficiently detailed in the Magistrate Judge's Report and Recommendation. Doc. 20. Sherry L.H. filed an application for disability insurance benefits in 2017 alleging disability beginning in 2013. After her claim was denied, she attended a hearing before ALJ Luetkenhaus in 2018 where she and a vocational expert testified. Following the hearing, her claim was denied in 2019 and her request for review by the Appeals Council was denied in 2020, making the ALJ's decision the final decision of the Commissioner. Doc. 20 at 1–2.

At the time of the hearing, Sherry was 52 years old and lived with her adult daughter and three-year-old granddaughter. Sherry was a high school graduate who previously ran the bar her

parents owned. In her application for disability benefits, Sherry listed the following conditions as limiting her ability to work: fibromyalgia; persistent depressive disorder with current major episode; anxiety and panic attacks; chronic pain; non-alcohol related stage 4 liver cirrhosis; obstructive sleep apnea; spondylosis of the lumbar spine; lumbar disc herniation; myofascial pain syndrome; hypertension; and long term concurrent use of opiate analgesics. At her hearing, Sherry testified that what kept her from working was back and joint pain, being confused, dropping things, poor balance, and swelling in the knees and ankles if standing for too long. *Id*. at 2.

Sherry testified that her diagnosis of neuropathy in the legs was a recent diagnosis and the neuropathy caused a stinging, "on fire" sensation. Her anxiety caused her to get worked up to where she could not think or breathe, and it could happen at any time and anywhere. She said she had panic attacks at least once a day, and the medication she took for those calmed her down. The epidural steroid injections she received in her lower back helped "years ago" when she first started receiving them but, more recently, they did not do "anything" for her. She said she dropped things as it felt like she was not holding onto anything. Sherry also testified that she had the problem of getting lost a lot while driving, so she only drove to places she had to go like doctors' appointments. She said she could walk or stand for 10 minutes, she could sit a bit longer, and she could lift and carry a gallon of milk. Some of her medications made her drowsy, though one kept her awake. Her daughter did the house chores and grocery shopping. Sherry spent a typical day sleeping and sitting, feeling depressed. She did not babysit her granddaughter who lived with her. *Id*. at 2–3.

Sherry also testified that her anxiety had become worse so she was taking Xanax "probably" every other day or every two days. She took oxycodone for pain relief every day, but

it no longer provided her relief beyond taking the edge off. She had trouble sleeping, though she spent "a lot" of the day in bed and took naps. She had trouble being around other people. She had trouble getting dressed and took a bath or showered "[m]aybe" once a week. She said she only remembered to take her medications in the morning, and she used pill compartments because of her forgetfulness in taking her medications. Sherry also said she sat during the day thinking "[a]bout not wanting to be here." She said she was unable to play with her granddaughter. *Id*. at 3.

The ALJ then posed the following hypothetical to the VE: an individual who was 50–52 years old with 12 years of education and the same past work as Sherry; retained the ability to do light work, but could only occasionally stoop; could frequently kneel, crouch, and crawl; could perform only simple, routine, and repetitive tasks; and could make only simple work-related decisions. The VE responded Sherry's past relevant work was semi-skilled and skilled and the ALJ was "talking about someone who's doing unskilled work activity." The ALJ identified three light, unskilled jobs the hypothetical individual could perform. Those three jobs were still available for the hypothetical individual identified who also could handle, finger, and feel only frequently. The VE identified different light, unskilled jobs for the hypothetical individual identified who could instead only occasionally handle, finger, and feel. One of those identified jobs would remain if the individual needed an additional unscheduled break for 15-20 minutes daily. None of the jobs would be available if the individual were off task more than 20 percent of the workday. *Id*. at 3–4.

At step two of the disability analysis, the ALJ determined Sherry had the following severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; obesity; depressive disorder; and anxiety disorder. The ALJ detailed that while no specific trigger points

3

were noted at a consultative physical examination, Sherry's rheumatology records supported the finding that her fibromyalgia was "severe." He explained that DDS did not consider Sherry's cognitive impairment a discrete impairment where the nurse practitioner who conducted the evaluation assessed Sherry with cognitive impairment "likely secondary to multiple etiologies, including pain, fibromyalgia, polypharmacy, obstructive sleep apnea, depression, and anxiety; active severe depression; and polypharmacy (currently on narcotic pain medications, which could impact cognitive function)." The ALJ also pointed out that Sherry's May 2017 neuropsychological evaluation resulted in a diagnosis of multifactorial cognitive dysfunction. The ALJ adopted the DDS determination "regarding the cognitive issues, considering the issues or aspects of/from other impairments."

At Step Three, the ALJ concluded Sherry did not meet or medically equal Listing 1.04 (Disorders of the spine) where she did not have spinal arachnoiditis, straight leg raise testing had routinely been negative, and examinations routinely indicated normal motor function, sensation, and reflexes. The ALJ also concluded that even if there was a discrete neurocognitive disorder, Listing 12.02 (Neurocognitive disorders) would not have been met or medically equaled as it relied upon the same "B criteria" as Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), and Sherry had only mild limitation in two broad areas of functioning and moderate limitation in the remaining two broad areas of functioning. *Id*. at 4–5.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding: "[T]he claimant had the [RFC] to perform light work as defined in 20 CFR § 404.1567(b) except no more than frequent kneeling, crouching, and crawling; no more than occasional stooping; performance of simple, routine, and repetitive tasks; and a requirement to make only simple

work-related decisions." After repeating Sherry's 2018 hearing testimony and the statements she made on several 2017 Disability Reports, the ALJ emphasized that because Sherry's date last insured was December 31, 2017, she had to establish disability on or before that date in order to be entitled to disability benefits. The ALJ then addressed the medical records dated between 2007 and June 2018, noting that medical records dated after December 31, 2017 were relevant "to the extent that the records provide insight into how the claimant functioned on or before her date last insured." AR 26. The medical records included several "rheumatology visit[s]," psychiatric evaluations, and psychotherapy sessions. *Id*. at 5.

      The medical records the ALJ discussed included those from Sherry's hospitalization in November 2016. Her primary care provider had sent her to the emergency room after Sherry reported worsening depression and suicidal thoughts; Sherry remained in the ER where she admitted she was suicidal and had a plan to overdose on sleeping pills until a bed became available in the psychiatric ward. At the time she was discharged, Sherry's cognition was grossly intact, her insight and judgment were fair, her fund of knowledge was intact, her memory was grossly intact, her perceptions were normal, and she was alert and oriented in all spheres. The ALJ also detailed that Sherry participated in a partial hospitalization program from February 23, 2017 to March 8, 2017 with regular individual and group counseling sessions addressing anxiety and depression related to her health issues, financial issues, and her daughter's problems. She made mild progress and she appeared better able to manage her anxiety and depression symptoms. Thereafter, Sherry attended her first psychotherapy/counseling session. *Id*. at 5–6.

      At her April 2017 consultative psychological evaluation, Sherry reported she had been depressed for many years, that she saw a counselor weekly, and that her medication was effective. Her clothing was neat and clean and her hygiene appropriate, she displayed appropriate

eye contact and normal speech, she was cooperative and followed instructions appropriately, and she easily gained a rapport with the evaluator. The clinical psychologist diagnosed persistent depressive disorder (per history) and unspecified anxiety disorder (per history). Sherry also underwent a neuropsychological evaluation in May 2017 which revealed, among other things, deficient performances on various measures of attention, memory functions were relatively stable, and severe depressive symptomatology. The neuropsychologist diagnosed major depressive disorder and multifactorial cognitive dysfunction and recommended regular psychotherapeutic and medication intervention and recommended Sherry have some oversight of complex activities such as managing finances and medications. *Id*. at 6.

      At her June 2017 consultative physical examination, Sherry was not in any acute distress and related well to the examination. She stated she had diffuse body pain due to fibromyalgia and a 25-year history of low back pain. Upon examination, there was no specific motor weakness or muscle atrophy, her sensation was intact, and she was tender all over with no specific trigger points due to fibromyalgia. At a November 2017 initial psychiatric evaluation, Sherry reported her anxiety and depression had worsened because of her health problems. She said her agitation and irritability improved with counseling. She was alert and oriented in all spheres, she was cooperative and displayed normal speech and normal psychomotor activity, her mood was sad and her affect constricted, her thought processes were goal directed but circumstantial, but she refused to answer the questions testing her attention and concentration as well as her calculation ability and short-term recall. She was diagnosed with major depressive disorder, generalized anxiety disorder, panic disorder, and insomnia and told to take Xanax as needed. *Id*. at 6–7.

      Though a neurologist raised the possibility of left lower extremity peripheral neuropathy in June 2018 upon Sherry's reports of a two-year history of left leg numbness and an

6

examination which revealed decreased sensation in the left leg, the neurologist stated a peripheral neuropathy workup was needed, but the "submitted medical records do not document further workup." AR 39. In May 2017, a State Agency psychological consultant opined Sherry had mild limitation in three of the broad areas of mental functioning and moderate limitation in the final area of concentration, persistence, or pace. That assessment was affirmed by a second State Agency psychological consultant in September 2017. In July and September 2017, State Agency medical consultants opined Sherry could perform light work with frequent kneeling, crouching, and crawling and occasional stooping, but was otherwise unlimited. *Id.*at 7.

In her Motion for Summary Judgment, Sherry argues 1) the RFC used by the ALJ was not supported by the evidence as Sherry's mental impairments were not appropriately addressed; 2) the RFC used by the ALJ was not supported by the evidence as Sherry's physical impairments were not appropriately addressed; and 3) the ALJ erred in assessing Sherry's credibility. *Id*. at 8. The Magistrate Judge's Report and Recommendation addressed and rejected each argument. *Id*. at 8–24.

## STANDARD OF REVIEW

When reviewing a decision to deny benefits, the Court "will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (internal quotations omitted). "When reviewing for substantial evidence, [the Court] do[es] not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Id.* If

reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## DISCUSSION

Plaintiff makes several objections to the magistrate judge's Report and Recommendations. Those narrative objections are not clearly delineated, often underdeveloped, and routinely fail to explain the import of the purported errors on the outcome of the case. In the future, counsel should more fully develop his arguments and separate issues into discrete sections to avoid waiving claims or arguments. Nonetheless, the Court will attempt to identify the issues counsel raises and address them.

**(1) Concentration, Persistence, and Pace and Understanding, Remembering, and Applying Information**

First, Plaintiff argues the ALJ erred by not incorporating significant limitations in concentration, persistence, and pace and understanding, remembering, and applying information when assessing Plaintiff's mental Residual Functional Capacity (RFC) Doc. 21-1 at 1–3. The Magistrate Judge addressed and rejected this argument in a through analysis. Doc. 20 at 10 ("For several reasons, Sherry has failed to show that in this particular case, the mental RFC which limited her to the performance of 'simple, routine, and repetitive tasks; and a requirement to make only simple work-related decisions' was deficient."). The Magistrate Judge first noted the only medical sources who provided opinions on the extent of Sherry's mental limitations, State Agency psychologist Leslie Fyans, Ph.D. and State Agency psychologist Joseph Mehr, Ph.D., indicated that Sherry did not have limitations in understanding and memory or adaption and was moderately limited in only her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods. Those opinions explained the medical evidence

of record suggested "the cognitive and attentional skills for simple one and two step task [sic] are intact. The client can sustain this across a work day and a work week." They further explained that Sherry's activities of daily living indicated she was capable of carrying out routine chores and tasks, her mental status was within normative limits, and her "adaptive and interpersonal and cognitive resources are capable of doing one and two step unskilled tasks." The ALJ recited these portions of the opinions and stated he agreed with and adopted the state agency RFC assessments. The ALJ explained that Sherry's statements on her disability paperwork and at the hearing appeared to overstate the extent of her limitations during the relevant period; her attention and concentration were intact at multiple examinations; and the recommendation following her May 2017 neuropsychological evaluation was that she have some oversight of complex activities such as managing finances and medications, "not that she lacked the cognitive capacity to perform any or all mental activities." *Id*. at 10–11.

      The Magistrate Judge found the State Agency psychologists' opinions that Sherry was capable of one and two step unskilled tasks over the course of a work day and work week were reflected in the ALJ's mental RFC finding except for the reference to "one and two step." Further, the Magistrate Judge noted, the ALJ had taken the guess work out of how a limitation to simple routine, repetitive tasks accounted for her moderate limitations in understanding, remembering or applying information and in concentration, persistence, or pace earlier in his decision. At Step Three, the Magistrate Judge also noted that "the ALJ cited the evidence which supported a moderate limitation in Sherry's ability to understand, remember, or apply information but also cited evidence in support of his finding that 'outside of formal cognitive testing, the claimant did not display significant memory or cognitive deficits' (e.g., Sherry had normal memory in October 2016, she followed instructions appropriately at her April 2017

9

consultative psychological evaluation, she had normal memory in August and December 2017, and she was able to drive and follow instructions from her treatment providers) such that Sherry was capable of performing simple, routine, repetitive tasks." *Id*. at 12. Likewise, with regard to Sherry's concentration, persistence, or pace, "the ALJ cited the evidence which supported a moderate limitation in that domain but also cited the evidence which evinced her ability to perform simple, routine, repetitive tasks (e.g., Sherry had no need to use prescribed Xanax to treat panic attacks in a few months as of September 2017, she babysat her two-year-old granddaughter in late 2016, she was busy caring for other family members as reported in October 2017, she followed instructions appropriately at a consultative psychological evaluation in April 2017)". *Id*. The Magistrate Judge also reasoned a moderate rating in concentration, persistence, or pace at Step Three did not imply greater limitations than described in the ALJ's mental RFC. *Id*. at 13. Thus, the ALJ properly accounted for Plaintiff's limitations. The Court agrees with the Magistrate Judge's analysis and thus rejects Plaintiff's first objection.

**(2) Ability to Adapt and Manage Oneself**

Next, Plaintiff argues the ALJ did not adequately account for limitations concerning Plaintiff's ability to adapt or manage herself as it related to her mental health symptoms. *Id*. at 4. Specifically, Plaintiff argues the Magistrate Judge erred by relying on a reference to "adaptive" as it related to Plaintiff' ability to do a one or two step job, rather than as it relates to her ability to manage her mental health symptoms. Doc. 21-1 at 4. Sherry also faults the ALJ for finding only "mild" limitation in the domain of the ability to adapt or manage oneself because, according to Sherry, "[y]ou are not managing your symptoms when you need to be hospitalized and then follow up with a partial hospitalization program 2 months later." In addressing Plaintiff's arguments, the Magistrate Judge first noted "Sherry's arguments as to the ALJ's mental RFC

finding amount to arguing that the ALJ improperly weighed the evidence of record. This is particularly so with regard to Sherry's contention that the ALJ's finding of "mild" limitations in Sherry's ability to adapt or manage herself as to her psychological symptoms was clearly not supported by the evidence and not addressed in the RFC." Doc. 20 at 13. In rejecting this argument, the Magistrate Judge stated, "the Court can easily trace the path of the ALJ's reasoning from the evidence to his finding of only 'mild' limitation in Sherry's ability to adapt or manage herself." *Id*.

> At Step Three, the ALJ cited evidence that Sherry's daughter and granddaughter were in and out of her house and Sherry babysat her granddaughter for a while in late 2016, Sherry participated in a partial hospitalization program, she started attending psychotherapy, and she stated in October 2017 she was busy caring for other family members. The ALJ also considered Sherry's own reports in 2017 that counseling was helpful and that it was stressful caring for her mother but she was coping appropriately. In light of such evidence, it was logical for the ALJ to conclude that, "[w]hile the claimant experienced some increased symptoms at times in relation to situational stressors, the claimant generally managed adequately." The Court can likewise trace the path of the ALJ's reasoning from the cited evidence to his agreement with the State Agency psychologists' assessment of only "mild" limitation in Sherry's ability to adapt or manage herself; the psychologists explained that Sherry's "adaptive . . . and cognitive resources are capable of doing one and two step unskilled tasks." Moreover, it logically follows from the ALJ's finding that Sherry generally managed adequately and his agreement with the State Agency psychologists' explanation that Sherry had the adaptive resources making her capable of doing unskilled tasks that the mental RFC did not specifically address her "mild" limitation in adapting or managing herself.

*Id*. at 14.

Based on the above, Plaintiff's argument that the Magistrate Judge erred by relying on a reference to "adaptive" as it related to Plaintiff' ability to do a one or two step job, rather than as it relates to her ability to manage her mental health symptoms, is not supported by the record where the ALJ considered and weighed information regarding both her cognitive and mental limitations in reaching his conclusion. To the extent Plaintiff claims the ALJ improperly weighed the conflicting evidence, that argument is addressed below.

**(3) Unrefuted Medical Expert Opinions Supporting the RFC.** *Id*. **at 5.**

Next, Plaintiff argues the weight the ALJ afforded to opinions from the State Agency experts should be discounted because the reviewers never examined Plaintiff and did not have the benefits of additional medical evidence developed late. Doc. 21-1 at 5. This argument is underdeveloped and fails to explain the effect of the purported error or cite to a proposition of law supporting such a claim. As such, the Court considers it waived.

**(4) Lack of Underlying Support in Records Reviewer's Opinion**

Plaintiff argues the ALJ erred in failing to recognize the lack of underlying support in the records reviewer's opinion. *Id*. at 6. According to Plaintiff, "[t]he failure by the Magistrate to adequately address the fibromyalgia issue in the context there are these 'unrefuted medical expert opinions' " that support that Plaintiff can do light work was error. Contrary to counsel's suggestion, the Magistrate Judge and ALJ did not fail to address Plaintiff's fibromyalgia. *See* Doc. 20 at 20–21. Counsel's vague reference to a supposed lack of underlying support in the records reviewer's opinion is underdeveloped, does not explain the impact of such supposed error, and does not refer to any legal authority which might guide the Court's analysis.

**(5) Credibility**

Plaintiff further argues her "extensive treatment and medication history support her claim and the Magistrate made errors evaluating the significance of her symptoms." *Id*. at 9. According to Plaintiff, "[t]he Magistrate and the ALJ was [sic] in error in not taking into consideration the waxing and wanning of not only her fibromyalgia, mental health symptoms and complaints of pain." *Id*. at 10. Yet the Magistrate Judge addressed this argument in his Report and Recommendation, and Plaintiff's cursory attempt at rehashing it here does nothing to advance this case. As the Magistrate Judge concluded after a thorough analysis, "[t]he Court need not

delve any further into Sherry's argument that the ALJ's subjective symptom evaluation was wanting. The only thing left for the Court to consider in order to find in Sherry's favor is for it to consider the facts anew. *See Lopex ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (stating that the reviewing court considers the entire administrative record, but it does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner)." Doc. 20 at 22. Again, to the extent Plaintiff's glancing references to unidentified "extensive treatment and medication history support her claim" suffice to preserve this claim at all, Plaintiff's argument is nothing more than an impermissible request to reweigh the evidence. The Court sees no error the Magistrate Judge's analysis. Accordingly, the Court adopts the Report and Recommendation in full.

## CONCLUSION

For the reasons set forth above, the Court adopts the Report and Recommendation (Doc. 20), denies Plaintiff's Motion (Doc. 15), and grants Defendant's Motion (Doc. 19).

Signed on this 19th day of November, 2021.

                s/ James E. Shadid
                James E. Shadid
                United States District Judge